# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## Thompson v. Prettyman, Appellant.

*Arbitration—Findings of referee—Appeals—Paper-books—Evidence.*

1. Findings of a referee confirmed by the court will not be disturbed by an appellate court, where there is evidence to support them, and manifest error does not appear.

2. The appellate court cannot reverse a referee's findings of fact, where the appellant has failed to print the testimony in his paper-book.

*Interest—Usury—Release—Subsequent transactions.*

3. Where the taint of usury attaches to an original transaction between a borrower and lender, it attaches to all consecutive obligations or securities growing out of the original vicious transaction, and none of the descendant obligations, however remote, can be free from it if the descent can be traced.

4. Where there has been a voluntary payment of usury, a subsequent release without consideration of any claim based upon such usury will not avail as a defense to the recovery of the usury paid by the borrower. The rule obtains when a release is exacted as a condition to the settlement of the loan for the usury paid on the loan, or on prior successive loans forming parts of one and the same transaction.

Argued Jan. 12, 1911. Appeal, No. 335, Jan. T., 1910, by defendant, from order of C. P. No. 3, Phila. Co., June Term, 1906, No. 2,560, dismissing exceptions to referee's report in case of Frank B. Thompson and William H. White, copartners trading as Thompson & White, v.

Charles B. Prettyman.   Before Fell, C. J., Mestrezat, Potter, Elkin and Stewart, JJ.   Affirmed.

Exceptions to report of Horace M. Rumsey, Esq., referee.

The opinion of the Supreme Court states the case.

*Errors assigned* were in dismissing exceptions to report of referee.

*Alex. Simpson, Jr.*, with him *J. Quincy Hunsicker*, for appellant.

*Lester B. Johnson*, for appellees.

Opinion by Mr. Justice Mestrezat, March 20, 1911:

We have carefully examined this record and have discovered no reversible error.   The exhaustive report of the learned referee covers every question of fact and law in the case.   He has discussed the evidence and found the facts most fully.   About all the authorities in this state bearing on the questions of law have been analyzed and applied to the facts.   The case was heard by the court on exceptions, and the referee was sustained in an opinion which deals with the law applicable to the controlling questions raised on the record.   Under the circumstances, we deem it unnecessary to refer to or discuss either the facts or law in detail.

With all the evidence in the case before them, the learned judges of the common pleas have confirmed the finding of facts by the referee.   It is a well-settled rule that the findings of a referee, confirmed by the court, will not be disturbed by an appellate court, where there is evidence to support them and manifest error does not appear: Ellison v. Hosie, 147 Pa. 336; Alexander v. Hamilton, 31 Pa. Superior Ct. 189.   There is an additional and controlling reason why we cannot interfere with the referee's findings of fact, and that is that the appellant has failed to print the testimony in his paper-book.   The

evidence not being before us, it would manifestly be improper for us to consider the alleged errors of fact, and, hence, we must assume that the findings are correct: Osterheldt v. Philadelphia, 195 Pa. 355. The facts as thus found clearly rule the case against the appellant and we may add that the evidence quoted by the referee fully sustains his findings.

The action was brought to recover $14,669.90 alleged to be usury on two loans made by the defendant to the plaintiffs. The referee finds that the plaintiffs paid $9,286.40 above the legal rate of interest on the first loan, and $5,383.50 on the second loan, and that all the transactions between the plaintiffs and the defendant, including the loans, grew out of the original building contract of June 6, 1905. He also finds that the first loan was paid on December 22, 1905, and January 11, 1906, and the second loan, made in January, 1906, was paid May 21, 1906, by the sale and conveyance to the defendant of certain houses and a vacant lot in pursuance of the agreement of that date. The consideration paid for the properties by the defendant was $61,500. It is admitted that the second loan was made by the defendant, and the referee finds that he also made the first loan.

The defendant relies on a release contained in the written agreement executed by the parties on May 21, 1906, to defeat a recovery of the usury in this action. The agreement was intended to settle all differences and disputes between the parties, including, as found by the referee, the usury paid on the loans. In this release the plaintiffs covenanted and agreed "to release, exonerate and forever discharge the said Prettyman from any and all claims, demands or actions, of whatsoever kind or nature, growing out of any transactions heretofore had by them or either of them, or which they or either of them were or are in any way directly or indirectly interested, with the said Prettyman to the date hereof, excepting of course the covenants and agreements herein contained." The defendant agreed to pay the plaintiffs for the houses

and the vacant lot, contained in the building operation out of which these loans arose, the sum of $61,500 which the referee finds was "the consideration paid by the defendant to the plaintiffs upon the transfer and sale of the said properties, recited in said agreement." It was also found that no part of said sum "constituted a return by the defendant to the plaintiffs of the unlawful overcharge and usurious interest exacted by the defendant from the plaintiffs in connection with the" two loans. This was supplemented by another finding as follows: "The actual value of the properties transferred to the defendant under the terms of the agreement of May 21, 1906, was equal to or in excess of $61,500, paid therefor by the defendant to the plaintiffs." The referee further found: "All the transactions between the plaintiffs and the defendant grew out of the original building contract of June 6, 1905; the loan of $137,000 and the exaction of usury therefor, the loan of $45,000 and the usury exacted therefor, and the final agreement of May 21, 1906, containing the release of the defendant from all claims by the plaintiffs were connected transactions between the same parties and were consecutive agreements, each arising out of a prior agreement. The effect of the usury in the first and second loans taints the agreement of May 21, 1906."

The difficulty of the appellant's position is that it ignores the specific finding that the $61,500 paid by the defendant to the plaintiffs as provided in the agreement were paid as the consideration for the real estate, and that no part of the sum was paid in settlement of the usurious claims, and the refusal of the court to find, as requested by defendant, that the release of the usury charges induced the execution of the agreement. Manifestly, therefore, the consideration passing from the defendant to the plaintiffs was exclusively for the conveyance of the realty, and there was no consideration for the agreement to release the defendant from liability to plaintiffs for the usurious interest. The release of the claim for usury was wholly without consideration.

The referee was fully justified in making an investigation of the whole transaction between the parties from its inception to the agreement of May 21, 1906. The several intervening steps, as he found, constituted but one continuous transaction. The usury taken on both loans, therefore, affected all subsequent agreements or securities in the transactions. The original taint attached to all consecutive obligations or securities growing out of the original vicious transaction, and none of the descendant obligations, however remote, can be free from it if the descent can be traced: Campbell v. Sloan, 62 Pa. 481; Earnest v. Hoskins, 100 Pa. 551. This is the settled construction of the Act of May 28, 1858, P. L. 622, and to carry into effect its purpose to thoroughly and effectively protect the borrower against the rapacity of an avaricious lender, it is necessary that the courts should closely scrutinize the entire transaction. It logically follows that to attain this end and properly enforce the statute, every part of the transaction must be searched and the tainted and vicious elements eliminated. The lender is entitled to the return of his loan with the legal rate of interest thereon, but when that has been obtained, the act erects an absolute barrier against any further demands in whatever form or by whatever name they may appear. It is equally potent and effective to protect the necessitous borrower when the usurious interest has passed into the hands of the lender and which he attempts to conceal and withhold by any evasive provision created for the purpose. It protects an impecunious and necessitous borrower against himself and gives full effect to the spirit and language of the statute by defeating any attempts to collect or retain usury by any pretense or evasive means. This doctrine is recognized in all of the numerous cases on the subject decided by this court. The public policy of the state, as disclosed by the legislation and decisions on the subject, condemns the taking or retention of an illegal rate of interest.

Tested by these principles the alleged voluntary pay-

ment of the usury and the release set up and relied on by the defendant are not a defense to this action. A payment of usury enforced by the necessities of a borrower cannot and should not be regarded as voluntary so as to exclude it from the protection of the statute. No man would pay excessive interest if he could secure the loan at the legal rate. He, therefore, pays usury because his necessities compel it, or because he thinks an anticipated investment will warrant it—in both cases, however, the fact remains that if he could get the loan at the legal rate he would not pay beyond it. The payment, therefore, is not voluntary in the sense that it defeats a recovery of usury paid the lender. In overruling such defense, this court, speaking by PAXSON, J., in Marr v. Marr, 110 60, said (p. 64): "The payment of usurious interest is usually voluntary, at least so far as a payment can be called voluntary which is the result of a sort of moral coercion, and of that peculiar kind of influence which an exacting usurer exercises over his unfortunate victim so long as he has money to pay with or credit to lose. It is only when a debtor is driven to the wall that he sets up the defense of usury, and if it would not avail when the payments were voluntary, it could not often be successfully invoked. There is no merit in this position."

The release contained in the agreement of May 21, 1906, cannot avail as a defense to the recovery of the usury paid by the plaintiffs. To so hold would be for this court to furnish an effective means to every lender to defeat the declared purpose of the statute and render impotent a law expressive of the public policy of the state. We hold that the court below was right in investigating the consideration of the release, and it has been found as a fact that no part of the usurious interest was repaid and that the release was without any consideration whatever. We must, therefore, deny any force or effect to the release unless we are prepared to hold that the parties may defeat the mandate of the statute and the borrower waive its protection when his necessities compel him to sign a

release. We have time and again ruled that this will not be done when the release is given at the time of the loan and before the usury has been paid. There can be no sound reason why the same rule should not obtain when a release is exacted as a condition to the settlement of a loan for the usury paid on the loan or on prior successive loans forming parts of one and the same transaction. Until the relation of lender and borrower has ceased, the latter remains subject to the same pressure and the reason for affording him protection against the illegal demands of the lender continues to exist. In other words, if the legislative intent to effectively prevent the payment and collection of usury as disclosed in the statute is to be fully and completely carried out the right of a borrower to pursue the excessive interest must not be defeated by permitting the lender to demand and the borrower to give a release or other acquittance so long as the lender retains the usury. Any other interpretation destroys the protection of the statute. We may appropriately close this discussion with the language of Judge HARE in the opinion in Blim v. Wilson, 5 Phila. 78, in which the court held that a release was not a defense to an action to recover usurious payments of interest. The learned judge said, inter alia: "But apart from all this, the case of the complainant might still rest with safety on the indisputable proposition, that a breach of the usury laws cannot be healed by a release, or by any other device intended to frustrate their policy and escape their force; if it could, those laws might always be evaded by doing successively at different periods that which confessedly cannot be done at once, and which they have forbidden to be done at all; the seal on the bottom of a subsequent deed would have a force which it would want, if it had been applied at the time; and the smallest sum might be rendered a consideration for an obligation for the payment of the largest, by inducing the obligor to execute a renunciation of the defense, which the statutes against usury meant that he should inalienably have. The proper

office of a release is to discharge demands, not to create
or augment them, and when the circumstances are such
that a bond would have no binding force in law, nothing
can be gained in point of obligation, by resorting to a re-
lease."

The exhaustive consideration of the case by the referee
and the opinion of the learned court below make any
further discussion here unnecessary.

The judgment is affirmed.