## Melnicoff v. Huber Investment Company.

B. H. Levintow, for plaintiff.

Edmonds, Obermayer & Rebmann, for defendant.

Lewis, J., May 13, 1929.—In July of 1927 plaintiff contracted to buy, under a lease plan, from the Huber Investment Company, defendant, a Studebaker sedan. The automobile was leased to plaintiff for a term of twelve months, "reserving for the hire and use thereof for said term the sum of $1685, itemized as follows:

"1. Basis Rental of Motor-vehicle, etc..................... $1495.00
"2. Settlement Charge (including Stamps, Fire and Theft Insurance) ....................................... 190.00
"3. Additional Insurance................................ none
"4. Miscellaneous ..................................... none

"Total ...................................... $1685.00

which sum shall be payable as follows, viz.: Five Hundred Ninety Five Dollars now in hand, the receipt of which is hereby acknowledged, and the residue Ten Hundred Ninety Dollars in monthly payments on the 16th day of each month during the term of this lease."

Plaintiff in this action seeks to recover the sum of $142, and in his statement of claim sets forth that the cost of fire and theft insurance for one year

from July 16, 1927, amounted to $15, that there was properly chargeable, for interest at the rate of 6 per cent. and for fire and theft insurance, a sum not exceeding $48, and that, therefore, the collection by the defendant from the plaintiff of the sum of $190, as above set forth, represents a usurious charge in excess of the legal rate of interest in this Commonwealth of 6 per cent. per annum. It is insisted that the sum of $142, which is covered under the settlement charge of $190, is usury. To this statement of claim an affidavit of defense in lieu of demurrer was filed, and the question to be determined is whether the action is maintainable. The statement of claim is barren of any allegation that the transaction between the parties was one of a loan made by the defendant to the plaintiff. On the contrary, the entire structure of the statement is framed upon the theory that the transaction was one of bailment, wherein the lessee, the plaintiff, undertook to pay certain instalments as rental for the hire and use of the Studebaker sedan.

While it is true that $142 of the item of $190, above referred to, is denominated and called in the statement "usury," nevertheless plaintiff has utterly failed to set forth the necessary facts indicating that there was a loan of money made by the defendant to the plaintiff or allegations from which the court might properly draw the conclusion or inference that the transaction was tainted with usury.

In determining whether a transaction is usurious, 27 Ruling Case Law, 211, lays down the general principles as follows: "No case is to be judged by what the parties appear to be or represent themselves to be doing, but by the transaction as disclosed by the whole evidence, and if from that it is in substance a receiving or contracting for the receiving of usurious interest for a loan or forbearance of money, the parties are subject to the statutory consequences, no matter what device they may have employed to conceal the true character of their dealings."

And in 39 Cyc., 918, it is said: "In deciding whether any given transaction is usurious or not, the court will disregard the form which it may take, and look only to the substance of the transaction in order to determine whether all the requisites of usury are present. . . . If all these requisites are found to be present the transaction will be condemned as usurious, whatever form it may assume and despite any disguise it may wear."

In the investigation of a transaction to determine whether usury has been exacted, the law intends that a search should penetrate through form, device or makeshift to the very substance. The form in which the agreement is made and the more or less indubious phrases and clauses in which the contract, bailment lease or conditional sales arrangement has been worded are immaterial. As was well pointed out in Thompson v. Prettyman, 231 Pa. 1, "to carry into effect its [the Act of 1858] purpose to thoroughly and effectively protect the borrower against the rapacity of an avaricious lender, it is necessary that the courts should closely scrutinize the entire transaction. . . ."

It is essential, however, to closely keep in mind the definition of usury and what constitutes in law usury. Usury has, from early times, been associated with the lending of money as indicated by the definition given in 4 Blackstone's Commentaries, 156: "An unlawful contract for a loan of money to receive the same again with exorbitant interest."

In Bouvier's Law Dictionary, it is defined: "An illegal profit which is required and received by a lender of a sum of money from the borrower for its use."

In Struthers v. Drexel, 122 U. S. (1887) 487, the court held: "Unless there was a loan there can be no usury."

Usury, therefore, is the exacting, taking or receiving of a greater rate of interest than allowed by law for *use or loan of money*. In order for a transaction to be usurious there must either be a loan at more than the legal rate of interest or the exaction of a greater than the legal rate for the forbearance of a debt or sum of money due. In order to constitute usury, there must be an express or implied loan; in the absence of a loan there can be no usury.

A loan may have the form and appearance of a purchase or a bailment transaction, but if there be a real and *bona fide* purchase or a lease not made as an occasion or pretext for a loan, the transaction will not be regarded usurious, even though the sale or lease be for an exorbitant price. The statute against the exaction of usurious interest forbids the receipt of more than a specified legal rate for the *hire of money*. There is no allegation in the statement of claim that the lease, which is the foundation of the action, was not made in good faith, neither is there any intimation that the transaction was not real or that it was pretended. From all that appears in the pleading, there is a *bona fide* leasing of a chattel at a price higher than the lessee would have to pay for the same for cash. It is difficult to see how a charge of usurious interest can be predicated in a case where the statement of claim shows an utter lack of the elements of lending or borrowing.

As was well said in 39 Cyc., 927: "A vendor may well fix upon his property one price for cash and another for credit, and the mere fact that the credit price exceeds the cost [cash] price by a greater percentage than is permitted by the usury laws is a matter of concern to the parties but not to the courts, barring evidence of bad faith. If the parties have acted in good faith such a transaction is not a loan, and not usurious."

The defendant had a perfect legal right to dispose of its property on such terms as were agreed upon. The facts, as appear from the statement of claim, do not show this to be a case where property was sold at cash valuation and certain payments were deferred in consideration that a greater rate of interest than allowed by law was to be paid by the purchaser. The most that can be said in favor of the plaintiff's position is that the bailment lease indicated a contract to pay a greater sum for the purchase price of an automobile on credit than would have been paid had the sale been for cash.

In recent years, companies like the defendant have sprung into existence in large numbers, due to the unprecedented demand by the public, in a good many cases against the best interests of the public, for automobiles, pianos, radio sets, refrigerators, heating equipment and household articles, which are purchased on the instalment plan. Houses are now wired on such arrangement. The extension of credit is worked out ordinarily by lease or conditional sales arrangement. Naturally, the risks are great. Cash would ordinarily purchase the article, chattel or service at a price or prices lower than the instalment or credit price.

In view of the importance of the question involved in this case, the court has examined a large number of cases bearing upon the subject, and has concluded the rule to be well settled that usury cannot be predicated upon the fact that property is sold on credit and at an advance of price over what would be charged in the case of a cash sale so long as it appears that the price charged is in fact fixed for the purchase of goods on credit with no intention or purpose of defeating the usury laws, although the difference between the cash price and the credit, if considered as interest, amounts to more than the legal rate.

As was said in one of the cases, a party "is not guilty of usury if the credit transaction is 'on the level' and not concocted indirectly to exact tribute for

the extension of credit and it appears that it is immaterial that the price fixed for a credit sale is arrived at by adding a per cent. on the cash price in excess of the legal rate of interest:" Righter v. Philadelphia Warehouse Co., 99 Pa. 289; Rossmassler v. Spielberger, 270 Pa. 30.

The following cases and annotations may be examined with profit, as they deal with the rights of finance corporations to enforce conditional sales contracts where the credit price exceeds the cash price by more than the legal rate of interest: Commercial Credit Co. v. Tarwater, 110 So. Repr. 39; Commercial Credit Co. v. Shelton, 104 So. Repr. 75; General Motors Acceptance Corp. v. Taylor, 294 S. W. Repr. 386; McAnsh v. Blauner, 222 Appellate Div. 381; Annotations in 48 Am. Law Reps. Ann. 1442; 28 Law Reps. Ann. (N. S.) 102.

Summing up the matter, the law seems to be settled that usury can only attach to a loan of money or to the forbearance of a debt and that on a contract to secure the price or value of work, the labor done or to be done or property sold, the contracting parties may agree on one price if cash is to be paid and upon as large an addition to cash price as may suit themselves if credit be given, and it is wholly immaterial whether the enhanced price is ascertained by the simple addition of a lumping sum to the credit price or by a percentage thereof.

"In neither case is the transaction usurious; it is neither a loan nor forbearance of a debt, but simply the contract price for work and labor done and property sold, and the difference between the cash and credit in such cases, whether six, ten or twenty per cent., must be left exclusively to the contract of the parties, and no amount of difference fairly agreed upon can be considered illegal:" Webb, Usury, par. 72, 28.

In our case, it is apparent that the defendant, so far as the statement of claim discloses, did not lend the plaintiff any sum of money; the transaction was clearly one of bailment. It is true that the "settlement charge" exceeded 6 per cent. of the sum agreed to be paid, but this consisted in addition to the various instalments of rental which the plaintiff agreed to pay.

We are constrained to hold that the statement of claim is insufficient in law to sustain an action. A judgment is entered for the defendant.