### STANDARD CREDIT CO. v. LAUDERBAUGH.

No. 22814. Oct. 16, 1934.

Sigler & Jackson, for plaintiff in error.

J. E. Williams, for defendant in error.

PER CURIAM. This is an appeal from a judgment of the district court of Carter county in favor of the defendant in error and against the plaintiff in error. In this opinion, the parties will be referred to as they appeared in the court below.

This case originated in the justice court in Carter county and was from there appealed to the district court in said county. The action was brought by plaintiff for the recovery of double the amount of usury theretofore paid by plaintiff to defendant and for a reasonable attorney's fee and costs. Defendant, in open court, admitted the allegations that usury had been charged and collected, and rested its defense on what it denominated a release. This release is as follows:

"April 6th, 1931.

"For one dollar and other valuable consideration to me in hand paid, receipt of which is hereby acknowledged, I do by these presents forever release and discharge Standard Credit Co. from all claim, or causes of actions for usury or any other action I now have or might have against Standard Credit Co., by reason of certain advancements or loans of money made to me by Standard Credit Co., prior to this date. this release

to be binding on my heirs, executors, administrators and assigns.

"(Signed) W. E. Lauderbaugh.
"Witnesses:

"(Signed) Joe W. Shinn,

"(Signed) Lyndall R. Byrd."

In the trial court there was some slight contention as to the amount involved, but as the case comes to this court the sole question is, Can said release be enforced as a defense to plaintiff's right of recovery?

It appears from the record that some eight months prior to the time this action was commenced in the justice court, the plaintiff borrowed the sum of $50 from the defendant, giving his promissory note and a mortgage signed by himself and wife. The notes on their face provided for 10 per cent. interest. At the end of the first month, plaintiff repaid the $50, together with $8.40 interest, and immediately executed a new note and reborrowed the $50. In all, there were eight of such transactions. In each case an item of $8.40 interest was paid. These various transactions at the end of each month were nothing more or less than a renewal of the original loan. When the loan was first made, defendant required the plaintiff to sign the release. The record is not clear, but perhaps such a release was required and signed at each renewal of the loan.

The charge that usury had been paid, as alleged in plaintiff's petition, is not denied. The fact that the plaintiff signed the release is not denied. The defendant relies solely on the release as its defense. Its contentions in that regard are not sound. The fact that the notes given by plaintiff provided for a legal rate of interest on their face is immaterial, if, in truth and in fact, an illegal rate of interest was charged and received.

"Knowingly taking, receiving, reserving, or charging a rate of interest in excess of the rate permitted by law for loan of money, represented by a promissory note, constitutes usury, whether the charging of the unlawful rate of interest appears upon the face of the note or not." Williams v. Wood, 168 Okla. 547, 36 P. (2d) 948.

Constitutional and statutory provisions, regulating the rate of interest that may be charged or collected, are declarations of a public policy. A contract to pay usury is not enforceable. Likewise, a contract to abide by a contract to pay usury is not enforceable.

One is as much against the fixed and declared policy of the state as the other.

The Supreme Court of Pennsylvania, in passing on a question almost identical to the question here involved, held:

"The release contained in the agreement of May 21, 1906, cannot avail as a defense to the recovery of usury paid by the plaintiff. To so hold would be for this court to furnish an effective means to every lender to defeat the declared purpose of the statute, and render impotent a law expressive of the public policy of the state." Thompson et al. v. Prettyman, 231 Pa. 1, 79 Atl. 874.

The release is nothing more than a plan, scheme, or device by which the lender may circumvent the fixed policy of the state and receive more than 10 per cent. per annum for the use of money.

"It is the uniform policy of the courts not to permit an act forbidden or penalized by statute to be done either directly or indirectly. This court will not uphold any shift or device by which the lender may receive more than 10 per cent. per annum for the use or forbearance of money." Dies v. Bank of Commerce of Sapulpa, 100 Okla. 205, 229 P. 474.

An obligation once usurious is always usurious. So long as its original existence continues, no plan or device will save the creditor from the statutory penalties imposed for charging or collecting usury, unless such plan or device purges the obligation of the usury. The release relied on by defendant does not purge the obligation of its usurious character, but reaffirms it. Therefore, such release cannot be enforced against the debtor.

"An obligation once usurious is always usurious so long as its original existence continues; but an indebtedness tainted with usury may be purged of the usury, and, when evidenced by a new, different, and clean instrument, will be enforced by the courts." Guinn et al. v. Security State Bank of Shawnee, 74 Okla. 102, 176 P. 898.

The taking, receiving, reserving, or charging a rate of interest more than 10 per cent. per annum is prohibited and penalized by statute. Any agreement by a debtor, releasing, or attempting to release, his creditor from such penalties, cannot be enforced unless the terms of such agreement purge the obligation, in fact and in law, of the usury.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. A. McCollum, Philip Kates,

and W. Lee Johnson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. McCollum and approved by Mr. Kates and Mr. Johnson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.