## SHARPE v. REED.

No. 25983.   Oct. 15, 1935.

Hickman & Ungerman, for plaintiff in error.

Hughey Baker, for defendant in error.

PER CURIAM.  In the instant case the issue turns upon the question of whether or not the contracts herein for the loan of money have been purged of the usury therein charged and collected.

The defendant in error, Mabel Reed, instituted suit against Fred P. Sharpe, doing business as Ace Loan Company, for the recovery of usury. The judgment of the lower court was in her favor and the loan company now seeks a review of the same in this court.

It appears from the record and admissions of counsel that a series of usurious loans were made by the loan company to Mrs. Reed. The sole and only defense presented by the loan company is a purported release entered into by and between the parties, wherein it is contended that Mrs. Reed releases the loan company from usury. The portion of the release which is material to the issue herein reads as follows:

"I, we or either M. E. Reed for and in consideration of a loan in the amount of $50, receipt of which is hereby acknowledged and/or an extension of time on a loan previously executed, have remised, released and forever discharged the said Ace Loan Co., their heirs, executors and administrators of and from any and all manner of action and actions, and claims for usury.***"

In a recent opinion of this court in Majestic Loan Co. v. Edmondson, 172 Okla. 222, 45 P. (2d) 504, the court said:

"A release, between a lender and borrower, relieving the lender from liability to the borrower for usury, when entered into fairly, free from fraud and coercion, based upon a valuable consideration, and for the purpose of preventing litigation concerning same, will be upheld by the courts, but where it appears that such a release was taken from the borrower by the lender to be used as a cloak or subterfuge to defeat the usury law or release the lender from liability under it, same will not be upheld by the courts."

Then again this court in Standard Credit Co. v. Lauderbaugh, 169 Okla. 266, 36 P. (2d) 949, states:

"It is the uniform policy of the courts not to permit an act forbidden or penalized by statute to be done either directly or indirectly. This court will not uphold any shift or device by which the lender may receive more than 10 per cent. per annum for the use or forbearance of money.

"The taking, receiving, reserving or charging a rate of interest more than 10 per cent. per annum is prohibited and penalized by the statute (St. 1931, sec. 9519). Any agreement by a debtor releasing or attempting to release his creditor from such penalties cannot be enforced unless the terms of such agreement purge the obligation, in fact and in law, of the usury."

So, applying the facts of this case to the above law declared by this court, the issue then is whether or not the release herein seeking to purge usury, the sole consideration being another usurious loan and the extension of time of payment of still another usurious loan, will purge the contract of usury.

The lender of money and the person who seeks to borrow the same do not stand on equal footing. Sometimes it is a matter of

great necessity to borrow money and the same is not ordinarily true in the matter of lending money. It has been the wisdom of the ages to throw about the borrower a certain protection, and practically all civilized countries have such a law. Our state has such a law, the maximum amount that can be charged being 10 per cent. per annum. The person who is compelled from a standpoint of necessity to sign a usurious contract, would sign a release such as this to purge the usury in the contract. The release herein seeking to purge usury is equally as bad as the usurious contract.

The court, therefore, finds that the release herein seeking to purge usury is merely a cloak or subterfuge to defeat the usurious contract and release the lender from liability thereunder.

Judgment affirmed.

The Supreme Court acknowledges the aid of District Judge R. W. Higgins, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and CORN, JJ., concur.