## DIES v. BANK OF COMMERCE OF SAPULPA.

No. 14075—Opinion Filed Sept. 16, 1924.

### 1. Pleading—Sufficiency upon General Demurrer.

A general demurrer admits the truth of all the facts well pleaded in the petition, and the petition must be liberally construed and all such facts must be taken as true for the purpose of the demurrer, and where a pleading states facts upon which the pleader is entitled to any relief, under the law, a general demurrer to the same should be overruled.

### 2. Interest — Legal and Contract Rates — Statute.

Section 5097, Comp. Stat. 1921, provides: "The legal rate of interest shall not exceed six per cent., in the absence of any contract as to the rate of interest, and by contract parties may agree upon any rate not to exceed ten per cent. per annum. Said rates of six and ten per cent. shall be, respectively, the legal rate and the maximum contract rates of interest."

### 3. Usury—Penalty—Statutes.

Section 5098, Comp. Stat. 1921, provides: "The taking, receiving. reserving or charging a greater rate of interest than is provided by the preceding section shall be deemed a forfeiture of twice the amount of interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm or corporation taking or receiving the same in an action in the nature of an action of debt twice the amount of the entire interest paid."

### 4. Same—Essentials of Usury.

Usury is the taking of a greater premium for the use of money loaned than the law allows, and if the lender takes, receives, reserves, or charges a greater rate than 10 per cent. per annum. he forfeits twice the amount of the interest which has been agreed to be paid thereon; and whatever the form of the transaction may be, it is usury if the rate of interest taken. charged, reserved, or received is unlawful.

### 5. Same—Evasions by Lender.

It is the uniform policy of the courts not to permit an act forbidden or penalized by statute to be done either directly or indirectly. This court will not uphold any shift or device by which the lender may receive more than 10 per cent. per annum for the use or forbearance of money.

### 6. Statutes—Constitutionality Presumed.

Every legislative act is presumed to be constitutional, and the court should not declare an act to be unconstitutional unless it is clearly so; and if there is doubt. the expressed will of the Legislature should be sustained.

### 7. Same—Effect of Partial Invalidity.

Where a part of a statute is unconstitutional, that section alone is not sufficient to authorize the courts to declare the remainder void, unless all the provisions are connected in the subject-matter. depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed that the Legislature would have passed the one without the other.

### 8. Same—Consideration of Title and Body of Act.

The court. in determining whether the statute was within the power of the Legislature to enact, is not confined to the title of the act, but may take into consideration the body of the act.

(Syllabus by Thompson. C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by S. B. Dies against the Bank of Commerce of Sapulpa, Okla., a corporation, for the recovery of $2,700, double liability claimed for interest paid to defendant in violation of the usury laws of the State of Oklahoma. Judgment for defendant. Plaintiff brings error. Reversed.

Rogers & Jones, for plaintiff in error.

Hughes, Foster & Ellinghausen, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Creek county, Okla. by S. B. Dies, plaintiff in error, plaintiff below, against the Bank of Commerce of Sapulpa. a corporation, defendant in error, defendant below. to recover

the sum of $2,700 claimed to have been paid by plaintiff in error to defendant in error in violation of the usury laws of the state of Oklahoma.

The parties to this action will be referred to as plaintiff and defendant in this opinion as they appeared in the lower court.

The sole question in this case is whether the trial court committed reversible error in sustaining the general demurrer to the petition of plaintiff, and in order to arrive at a correct decision in this case it is necessary to set out a copy of the petition and a copy of the demurrer thereto.

The petition, omitting the caption, is as follows:

"Comes now the above-named plaintiff and for cause of action against the above-named defendant states facts as follows:

"I. That plaintiff is now and has been at all times hereinafter mentioned a citizen of the state of Oklahoma and resident of the city of Sapulpa, in said state, while at the same times defendant has been and now is a corporation incorporated and organized and engaged in a general banking business at Sapulpa, aforesaid, under the laws of the state of Oklahoma.

"II. Plaintiff alleges that on January 10, 1920, he applied to the defendant bank for a loan of money, namely $6,000, for a period of six months from said date: that pursuant to plaintiff's said application defendant made and paid to plaintiff a loan of said amount, for said period; that before defendant would make and pay the amount of said loan to plaintiff as aforesaid, the defendant demanded and required of plaintiff that he execute and deliver to defendant the promissory note of plaintiff, subscribed by himself and wife, Ora Lee Dies, as makers thereof, for the sum of $7,350, of date of January 10, 1920, to be payable by the terms thereof six months after date thereof to the defendant by its corporate name, or its order, with interest thereon at the rate of ten per centum per annum from maturity thereof; and that the plaintiff should secure such note by a first mortgage in writing, on the following described real estate and premises, situate in Creek county, Okla., to wit: Beginning at the southwest corner of lot numbered 6, in block numbered 36; thence north along the east side of Walnut street 155 feet; thence east 50 feet; thence south 155 feet to Dewey avenue; thence west 50 feet to the point of beginning, the same being parts of lots numbered 3 and 6 in block numbered 36, in the city of Sapulpa, in said county and state, said mortgage to contain the terms and conditions usual to such instruments in Oklahoma and to be executed by plaintiff and his said wife;

"III. Plaintiff alleges that being in great straits for the money, and his necessity

therefor being imperative he agreed to the foregoing requirements of the defendant and fully complied therewith on his part; that for and in consideration of such loan of money, to wit: $6,000 on the terms and conditions that plaintiff was at the maturity of said loan as aforesaid to pay to defendant for the interest upon, and use of said sum of $6,000 for said six months, the said sum of $1,350, included in said note over and above the said $6,000 so to be loaned to the plaintiff, the plaintiff did make and deliver to the defendant his promissory note of amount, date and terms so required by defendant as aforesaid, a true copy of which promissory note is hereto attached, marked 'Exhibit A' and made a part of this petition; that at the same time and place, further complying with defendant's said requirements of said loan, plaintiff executed and delivered to defendant the first mortgage in writing of himself and wife, covering the hereinbefore described premises, conditioned as aforesaid, a true copy of which mortgage is hereto attached, marked 'Exhibit B' and made a part of this petition; that, thereupon, the defendant made and paid the said sum of $6,000 to plaintiff in full satisfaction and payment of said loan of money to him; plaintiff avers that he received the said sum of $6,000 and no more or other thing of value, as full payment, and consideration for plaintiff's said promissory note, in the said sum of $7,350 to mature and be payable six months from date, as aforesaid; and the plaintiff alleges that by making said loan upon the terms and conditions aforesaid the defendant reserved to itself the difference between the sum of $300, the legal interest at rate of 10 per cent. per annum provided for by the purport of said note and mortgage for said loan of $6,000 for said six months, and the sum of $1,350, included in said promissory note, over and above the amount of said loan, namely $6,000, as interest for the use thereof, which difference amounts to the sum of $1,050; that the plaintiff retained and used said loan of money, only until the 15th day of March, 1920, when he tendered to the defendant the sum of $6,300, which was the true amount of said loan, with legal interest at rate of 10 per centum per annum for the full duration of said loan as provided in said note and mortgage and that the defendant refused to accept the said amount so tendered it by plaintiff and demanded of plaintiff the full amount purported by said note and mortgage; that upon defendant's said refusal of plaintiff's tender as aforesaid, and upon defendant's said demand therefor the plaintiff did on the said 15th day of March, 1920, pay to the defendant, the full and complete sum of its said demand, to wit: $7,350, and received from defendant plaintiff's said note, and release of his said mortgage: plaintiff states that his wife, Ora Lee Dies had no interest in said loan, or premises mortgaged as aforesaid and that she subscribed her name to said note and mortgage at the request of plaintiff only for the purpose of satisfying

defendant's requirement that she join in the execution of said note and mortgage; plaintiff alleges that defendant by its said requirements of plaintiff in the transaction of said loan as aforesaid, and by accepting said sum of $7,350 of plaintiff on demand of defendant, the defendant did take, receive, reserve and charge the plaintiff a greater rate of interest than is prescribed or allowed by statute, in such case made and provided, and the plaintiff having fully paid the defendant upon its said requirement and demand the said sum of $1,350, as interest on said loan for said period as aforesaid, $300 thereof being the legal interest provided for in said note and mortgage and $1,050 thereof being in excess of such legal interest is usury as provided by statute, and said transaction of said loan under the circumstances thereof, as set forth herein, was usurious and corruptly so, on the part of the defendant, whereby plaintiff has a right of action against the defendant, in the nature of an action of debt for twice the amount of the said entire interest paid by him to defendant, namely twice the sum of $1,350 as aforesaid, making the defendant indebted to the plaintiff in the sum of $2,700, and for which the plaintiff sues the defendant in this action.

"Wherefore: Plaintiff prays judgment against the defendant for the sum of $2,700 and the costs of this cause, and such further and other relief as he' may be entitled to upon all the facts in a court of justice.

"S. B. Dies,
"Plaintiff.

"By R. B. Thompson,
"His Attorney."

Copies of the note and mortgage were attached to this petition as exhibits.

Defendant filed a general demurrer, which is as follows, omitting the caption:

"Comes now the above named defendant, Bank of Commerce of Sapulpa, Okla., a corporation, by its attorneys, Hughes & Dannenberg and Hughes & Foster, and demurs to the petition of the plaintiff filed herein, and for grounds of demurrer, state: That the petition of the plaintiff fails to state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant, or to entitle the plaintiff to the relief prayed for, or to any relief.

"Wherefore, defendant prays that the plaintiff's petition herein be dismissed and that the defendant have judgment against the plaintiff for its costs herein expended.

"Hughes & Dannenberg,
"Hughes & Foster,
"Attorneys for Defendant."

The court sustained the demurrer and plaintiff reserved his exception, and declined to plead further, and the cause comes regularly upon appeal by the plaintiff to this court.

The attorneys for plaintiff set forth in their brief but one assignment of error and that is:

"Whether or not the trial court erred in sustaining the demurrer to the petition of plaintiff."

The attorneys for defendant in their answer brief raise three propositions, which are as follows:

"Point I. The petition is wholly lacking in the necessary material allegations, in that it fails to allege that the act of contracting for the alleged usurious interest was knowingly done."

Point II. That if section 2 of chap. 20 of the Session Laws of 1916, now section 5099, Comp. Stat. 1921, is applicable, plaintiff should have pleaded a tender to the defendant to have been made in writing, and that such tender should have been made to such party only as service may be had upon as in cases of actions at law.

Point III. As a third proposition, that chapter 20, Session Laws of 1916, is unconstitutional, being in violation of section 59 of art. 5 of the Constitution, in that, in section 4 there is an arbitrary and unreasonable classification of creditors and that it is not of uniform operation throughout the state, and that it is in violation of section 57 of art. 5 of the Constitution, in that the purport of the act is not clearly expressed in its title. This being true, section 1005, Revised Laws of 1910, providing for a written demand before bringing an action for the recovery of alleged usurious interest, is still in force and the petition, failing to allege such written demand, is therefore, demurrable.

The rule of law to be applied in this action is:

"A general demurrer admits the truth of all the facts well pleaded in the petition and the petition must be liberally construed and all such facts must be taken as true for the purpose of the demurrer and where a pleading states facts upon which the pleader is entitled to any relief, under the law, a general demurrer to the same should be overruled." Folsom v. The Mid-Continent Life Ins. Co. et al., 94 Okla. 181, 221 Pac. 486; Schreiner v. City Nat. Bank, 76 Okla. 76, 183 Pac. 905; Nale v. Hernstein et al., 84 Okla. 35, 202 Pac. 284; Bush v. Mo. State Life Ins. Co., 86 Okla. 182, 207 Pac. 317; Threadgill v. Board of Education, 85 Okla. 121, 204 Pac. 1100.

Applying this rule to the petition in the instant case, we find that it is alleged that the plaintiff borrowed $6,000 from the defendant bank, and that the bank required him to execute his note for $7,350 for the use

of said money, or a total of $1,350 more than the amount he received under said loan, payable at maturity with interest thereon at the rate of ten per cent. from and after maturity; that said note matured within six months from January 10, 1920, and that he executed a mortgage on his lands for the sum of $7,350 as security for the payment of said amount; that before maturity he went to the bank and offered and tendered to the bank $6,300, the $6,000 being for the principal and the $300 being the interest at ten per cent. on said principal for the full term of six months; that said bank refused to accept the said sum of $6,300, and exacted of him and required him to pay the full sum of $7,350, or $1,050 more than the legal rate of interest for the use of said money; that said bank received, reserved, and charged the sum of $1,050 over and above the legal rate of interest authorized by the laws of this state, and that said overcharge of the said $1,050 was made by the defendant in violation of the usury laws of the state of Oklahoma and was corruptly charged by the defendant bank, and prayed for judgment for the sum of $2,750, the same being double the amount of the $1,350 so charged, reserved, and received by the defendant bank.

It is urged by the attorneys for defendant that the plaintiff failed to plead specifically that this amount reserved and held by the bank was "knowingly" so charged, held, and reserved.

It is the opinion of the court that the language of the petition is sufficiently clear, although the word, "knowingly" is not used, to charge in effect, that it was knowingly done, for this language occurs in the petition that he offered to pay and tendered the exact amount of the principal and the exact amount of ten per cent. legal rate of interest to the bank for the full term of six months, and the bank refused to accept the same, but compelled him to pay the entire $1,350, and it is further charged in the petition that this was "corruptly done," which, in our opinion, was tantamount to saying that it was "knowingly" done, and done with the full knowledge on part of the bank that it was overcharging the plaintiff.

The defendant in this case is a bank, engaged in the sole and only business of lending money, charging and collecting interest thereon, and is charged with the duty of knowing what the legal rate of interest is, and with knowledge of the law regulating the loaning of money in this state, and upon this state of the case we cannot agree with counsel for defendant.

and we are clearly of the opinion that the court committed error in sustaining the general demurrer to plaintiff's petition upon this proposition. In order to sustain this contention on part of this defendant, we would be compelled to say the Bank of Commerce of Sapulpa, engaged in the loan of money and collecting interest thereon, did not know that when it charged the plaintiff in this case the unconscionable rate of 45 per cent. interest for the use of this money for a period of six months it did not knowingly do it, and the court would be compelled to ignore the further fact alleged in the petition, as stated above in this opinion, that plaintiff tendered the legal rate of interest and the principal, which the defendant refused, and demanded and collected $1,050 more than the law allows.

Section 5095, Comp. Stat. 1921, defines interest as follows:

"Interest is the compensation allowed for the use or forbearance, or detention of money, or its equivalent."

Section 5097, Comp. Stat 1921, provides the legal and contract rates of interest as follows:

"The legal rate of interest shall not exceed six per cent., in the absence of any contract as to the rate of interest, and by contract parties may agree upon any rate not to exceed ten per cent. per annum. Said rates of six and ten per cent. shall be, respectively, the legal rate and the maximum contract rates of interest."

Usury is defined by the statute in section 5098, as follows:

"The taking, receiving, reserving or charging a greater rate of interest than is provided by the preceding section shall be deemed a forfeiture of twice the amount of interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm or corporation taking or receiving the same in an action in the nature of an action of debt twice the amount of the entire interest paid."

This court, in defining what constitutes usury under the statute, in the case of Midland Savings & Loan Co. v. Tuohy, 69 Okla. 270, 170 Pac. 244, says:

"Usury is the taking of a greater premium for the use of money loaned than the law allows, and if the lender takes, receives, reserves, or charges a greater rate than 10 per cent. per annum, he forfeits twice the amount of the interest which has been agreed to be paid thereon; and whatever the form of the transaction may be,

it is usury if the rate of interest taken, charged, reserved, or received is unlawful."

Unquestionably, the petition in this case alleges the taking, receiving, and reserving and charging a greater rate of interest than is provided by the statute, and this court in the case of Bean v. Rumrill, 69 Okla. 300, 172 Pac. 456, says:

"It is the uniform policy of the courts not to permit an act forbidden or penalized by statute to be done either directly or indirectly. This court will not uphold any shift or device by which the lender may receive more than ten per cent. per annum for the use or forbearance of money.

"If the interest is paid, either voluntarily or from the proceeds of the sale of the borrower's property, it cannot logically be said that the same was not paid by the borrower. The law does not require a showing that the interest was voluntarily paid."

And, in the body of the opinion, the court quoted from Kendig v. Marble, 55 Iowa. 386, 7 N. W. 630, as follows:

"The law will permit no device to cover and protect a usurious contract. If a judgment by confession, or otherwise, be a part of such device intended to prevent the disclosure of the real character of the contract, it will not bind the parties. If the law were otherwise, the usurer could with little trouble defeat the statutes," etc.

In the case of Citizens State Bank v. Strahan, 63 Okla. 288, 165 Pac. 189, this court said:

"The great weight of authority, both in the state and federal courts, is that usury statutes, being remedial, should be given a liberal construction that will carry out the intention of the lawmaking body. Ordway v. Central Nat. Bank, 47 Md. 217, 28 Am. Rep. 455; Farmers' Nat. Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196; Eaker v. Bryant, 24 Cal. 87, 140 Pac. 310; Citizens' Bank v. Donnell, 172 Mo. 304, 72 S. W. 925; Albion Nat. Bank v. Montgomery, 54 Neb. 681, 74 N. W. 1102."

Under section 5098, above quoted, and the definition of usury in the authorities, above cited, the court is of the opinion that the petition states a good cause of action against the defendant without reference to section 5099, quoted by attorneys for both plaintiff and defendant in their separate briefs, which provides that said section "shall not be construed to prevent the debtor from bringing his action to recover twice the amount of interest charged or paid in said contract sued upon" and we do not think that said section 5099 applies to the instant case.

Attorneys for defendant raise the constitutional question, and say that chapter 20, Sess. Laws of 1916, is unconstitutional as being in violation of section 59, article 6, of the Constitution, and section 57, article 5, of the Constitution. The appellate courts of this state have repeatedly said that:

"Every legislative act is presumed to be constitutional, and the court should not declare an act to be unconstitutional unless it is clearly so; and if there is doubt, the expressed will of the Legislature should be sustained." State v. Coyle, 7 Okla. Cr. 50, 122 Pac. 243.

In construing the statute, if it be subject to two constructions, one conforming to and the other contravening the Constitution, courts will adopt that construction which conforms to the Constitution. Ex parte Hunnicutt, 7 Okla. Cr. 213, 123 Pac. 179.

The Supreme Court, whenever possible to do so, will entertain presumptions in favor of the constitutionality of statutes. Dickinson v. Perry, 75 Okla. 25, 181 Pac. 504.

If the proper construction is doubtful, this doubt must be resolved in favor of the law, though such construction may not be the mere natural interpretation of the language used. Ledger v. Bockoven, 77 Okla. 58, 185 Pac. 907.

The section of the act, complained of as being unconstitutional, is section 4, page 27, of Session Laws of 1916, which provides that no suit upon any contract of $300 or less, or an action in replevin, or to foreclose any mortgage or lien, given as security therefor, shall be maintained in the courts of this state, unless at the time of filing of suit there shall be filed with the complaint an affidavit setting forth that the contract sued on was not made in violation of the interest laws of the state, and that a greater rate of interest than ten per cent. has not been charged, reserved, or collected on such contract sued upon. This section is a separate and distinct section from section 1, which amends section 1005 of the Rev. Laws of 1910, a part of which has heretofore been quoted in this opinion, and the section complained of has no relation nor is it in any way dependent upon section 1, and this court has repeatedly held that:

"Where a part of a statute is unconstitutional, that section alone is not sufficient to authorize the courts to declare the remainder void, unless all the provisions are connected in the subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed that the Legislature would have passed the one without the other." In re Co. Com'rs of Counties Comprising 7th Judicial

Dist., 22 Okla. 435, 98 Pac. 557; Pioneer Telephone & Telegraph Co. v. State, 40 Okla. 417, 136 Pac. 1033; Parwal Inv. Co. et al. v. State, 71 Okla. 121, 175 Pac. 514.

Applying the above rule to the instant case the court is clearly of the opinion that the two sections are clearly independent of each other, and that while we do not hold that section four is unconstitutional. the other sections of the act do not contravene the Constitution, and it is, therefore, unnecessary to a decision in this case for this court to pass upon the constitutionality of section four.

The further question is raised as to the constitutionality of the act above referred to, in that, it is claimed by attorneys for defendant the purport of the act is not clearly expressed in its title, and this being true, section 1005, Rev. Laws 1910, is still in force, and that the petition failed to allege a written demand as provided in said section.

Upon an examination of the title to said act, we find, among other things. it recites:

"An act relating to the lending of money, amending section 1005 of the Revised Laws of Oklahoma, 1910, providing penalties for the violation of the interest laws of the state. * * *"

The act of the Legislature of 1916, above referred to, amended section 1005 by rewriting the entire section. striking out the provision:

"That before any suit can be brought to recover any usurious interest the party bringing such suit must make written demand for such usury."

And the court is of the opinion that the Legislature was clearly within its rights and powers, under the title, to make such changes or amendments, as were made by it in said act. The court, under the provision of the Constitution cited by attorneys for defendant, is not confined to the title of the act but may take into consideration the body of the act, as we decided in the case of Kansas Natural Gas Co. v. Haskell, 172 Fed. 545, in which the court held:

"The court. in determining whether the statute was within the power of the Legislature to enact, is not confined to the title of the act, but may take into consideration the body of the act."

We are, therefore, of the opinion that the constitutional questions, raised by the attorneys for defendant, cannot be sustained.

For the reasons heretofore set forth in this opinion, it is the opinion of the court that the judgment of the lower court, in sustaining the demurrer to the petition herein, should be and is hereby reversed, and the cause remanded with instructions to overrule the demurrer and to take such further action not inconsistent with this opinion.

By the Court: It is so ordered.