## MARTIN et al. v. FOLLIS.

No. 18563. Opinion Filed Sept. 25, 1928.

Rehearing Denied Nov. 20, 1928.

Preston Davis and Dyke Ballinger, for plaintiff in error United States Fidelity & Guaranty Company.

Frank Nesbitt, for defendant in error.

HEFNER, J.   Zella Follis, the defendant in error, as plaintiff, brought this suit in the district court of Ottawa county against Sam Martin and the United States Fidelity & Guaranty Company, as defendants, to recover damages sustained by the plaintiff through the alleged negligent acts of the defendant Sam Martin while acting in his official capacity as special highway officer of Ottawa county. The United States Fidelity & Guaranty Company was joined as defendant as the surety on his official bond.

The case was tried to a jury, and the plaintiff recovered damages in the sum of $2,000 against both defendants. From this judgment, the surety company only has appealed.

On February 23, 1925, the county commissioners of Ottawa county appointed Sam Martin as special officer for the county for a term of one year under the provisions of section 4, chapter 194, Session Laws of Oklahoma 1923. The surety company executed the official bond. One year subsequent to his appointment the county commissioners did not make any new appointment for this office; neither did they reappoint the defendant Sam Martin. He, however, continued thereafter to act as such special highway officer. On April 29, 1926, he paid the surety company the premium on his official bond, which paid the premium thereon up to February 23, 1927. The defendant Martin at the time the accident occurred also held a commission as policeman of the city of Miami and a commission as deputy sheriff.

On July 3 and 4, 1926, a celebration was held in Miami at the Fair Grounds, and there were approximately 20,000 persons in attendance and many automobiles were being driven on Main street to and from the Fair Grounds. About 9 o'clock p. m. on July 3, 1926, a man was held up and assaulted some three miles west of Miami. He was brought into town and the matter reported to city policeman James, who called the defendant Martin and told him what had happened. When Martin received the word he drove down Main street in his car while the street was crowded with many cars and pedestrians, at about 45 miles per hour, and ran into the car in which the plaintiff was riding with sufficient force to knock it over and throw the plaintiff to the street, thereby breaking her collar bone and inflicting numerous body cuts and bruises.

Specifications of error Nos. 1 and 2 challenge the sufficiency of the petition filed by the plaintiff below. We have examined the allegations in the petition, and think they were sufficient.

At the conclusion of the evidence of the plaintiff a demurrer was interposed thereto by the defendants on the theory the evidence did not show the defendant Martin was acting under any legal process or that there was cause for arrest without warrant, and that his actions constituted a naked trespass for which no action would lie against the surety company upon the bond which it executed on behalf of the defendant Martin.

Our statutes provide when an arrest may be made without a warrant. Section 2471, C. O. S. 1921, is as follows:

"A peace officer may, without a warrant, arrest a person: First. For a public offense committed or attempted in his presence. Second. When the person arrested has committed a felony although not in his presence. Third. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it."

Plaintiff's evidence clearly showed that an assault had been committed on the highway. Under our statute an assault with the intent to commit a felony, or an assault with intent to kill, or an assault with a dangerous weapon is a felony. Plaintiff's evidence disclosed that when the accident occurred the defendant was enroute to the scene of the crime and he had been informed that an assault had been committed. This evidence is certainly sufficient to justify the defendant in making an investigation of the crime, and it was while he was en route to do this that the accident occurred.

A. J. Lampkin, county clerk, produced the official bond of the defendant Sam Martin as special highway officer. The bond was introduced in evidence, and the court clerk testified Martin was still highway officer. The evidence clearly established the negligence of the defendant Martin. The trial court committed no error when it overruled the demurrer to the evidence.

The surety company urges the bond sued on did not cover Martin's acts in making or attempting to make arrests for violations of laws other than violation of the traffic laws of the state. Section 4, chapter 194, page 346, Session Laws of Oklahoma 1923, is as follows:

"For the purpose of enforcing the provisions of this act, any peace officer or specially commissioned officer shall have authority to make arrests for the violations of any of the provisions of this act, and the board of county commissioners of any county is hereby given authority to commission special officers or patrolmen as peace officers to patrol public highways and they shall have authority to make arrests for the violations of any of the provisions of this act or any other act regarding motor vehicles or the usage of public highways or for other violations of law. * * *"

This act clothes all peace officers and all specially commissioned officers with authority to make arrests for the violation of any of the provisions of the act or any other act regarding motor vehicles or the usage of public highways or for "other violations of law." The act makes a special highway officer a peace officer and provides that he may make arrests for violations of any provision of the act; for violations of any other act regarding motor vehicles or usage of the public highway; and for other violations of law. When the act clothed the highway officer with power to make arrests for violations of the act and for violations of any other act regarding motor vehicles or usage of public highways, it covered all the possible violations of traffic laws. After having so provided, the act then authorizes the highway officer to make arrests for other violations of the law. The surety company contends that the words "or for other violations of law" mean violations of the traffic laws. The act completely covered all violations of the traffic laws before it provided for arrests for other violations of the law. If the act is limited to the contention of the surety company, then the words "or for other violations of law" could have no meaning.

In passing this act, it was doubtless the intention of the Legislature, not only to regulate traffic upon the highways of the state, but to protect the traveling public from reckless drivers, robberies, and other unlawful acts committed upon or near the highways, and to clothe the special officers with full authority to make arrests for any and all of these offenses.

A statute will be given a construction which renders every word operative, rather than one which makes some words idle and nugatory. Kansas City Southern Ry. Co. v. Wallace et al., 38 Okla. 233, 132 Pac. 908. By giving the words "or for other violations of law" the meaning the Legislature doubtless intended them to have, that is, for violations of law other than traffic laws, every word of the act is given a definite meaning. We, therefore, hold the Legislature intended to clothe the special highway officers with authority to make arrests for violations of law other than the traffic laws.

The surety company again contends that if the phrase "or for other violations of law" is construed to authorize special highway officers to make arrests other than those for violations of the traffic laws, then the act is unconstitutional because it is in violation of article 5, section 57, of the Constitution, which provides, "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title." There are many decisions to the effect that an act can

contain but one subject, and that subject must be clearly expressed in its title. The title to the act is as follows:

"Gross Weight of Vehicles. An act regulating the gross weight of vehicles or other objects; regulating the distribution of loads and speeds; providing for other restrictions of the usage of public highways; providing for enforcement and providing penalty, declaring the existence of an emergency."

A portion of the title to the act is as follows: "Providing for other restrictions of the usage of public highways; providing for enforcement and providing penalty." For the purpose of enforcing the provisions of the act, any peace officer or specially commissioned officer was clothed with authority to make arrests. When the title provided for the "enforcement" of the act, it would follow that it would provide for its enforcement by peace officers. It would therefore be presumed that the act would deal to some extent at least with "peace officers." The act authorized all peace officers to enforce the act and specially authorized the board of county commissioners to appoint special officers or patrolmen as "peace officers" to patrol the public highways. With the many crimes that have in recent years been committed upon our highways, the Legislature would naturally authorize the peace officers to make arrests for these crimes.

Suppose a person should be robbed on the public highway and immediately thereafter a patrolman appeared and he was informed of the robbery. It is unreasonable to suppose the Legislature did not intend to clothe the peace officer with authority to make the arrest. It would hardly be supposed that any officer other than a peace officer would be called upon to enforce the provisions of the act.

It is a well-known canon of construction that every legislative act is presumed to be constitutional, and the court should not declare an act to be unconstitutional unless it is clearly so; and if there is doubt, the expressed will of the Legislature should be sustained. Dies v. Bank of Commerce, 100 Okla. 205, 229 Pac. 474. We do not think the act is contrary to the provisions of the Constitution.

At the conclusion of all of the testimony, the defendants requested a peremptory instruction directing the jury to return a verdict for the defendants. The request was based on two grounds. The first one was that the evidence failed to show that the defendant Martin at the time of the accident was acting officially as a highway officer under his appointment from the board of county commissioners, but, on the other hand, showed he at the time was acting in the official capacity of special policeman for the city of Miami. This question was submitted to the jury by the court in its instruction No. 16, which is as follows:

"You are instructed, gentlemen of the jury, that the bond given by the defendant United States Fidelity & Guaranty Company on behalf of the defendant, Sam Martin, contains the following provision: 'Now, therefore, the condition of this obligation is such that if the said Sam Martin, special highway officer, Ottawa county, Oklahoma, shall well and faithfully perform all of the duties of his said office, then this obligation to be void, otherwise to remain in full force and effect.'

"Under this provision of the said bond, before you can find against the defendant United States Fidelity & Guaranty Company, you must find by a fair preponderance of the evidence that the injuries sustained by the plaintiff, if any, were caused by the failure of the said Sam Martin to well and faithfully perform his duties as special highway officer, and that said injuries of plaintiff, if any, were caused by the failure of the defendant Sam Martin to perform some duty devolving on him as special highway officer of Ottawa county, Okla., and unless you so find, your verdict must be for the defendant United States Fidelity & Guaranty Company."

The county clerk testified the defendant Martin was a special highway officer. The defendant himself, in substance, testified that on July 3, 1926, and for a few days thereafter, he was a special highway officer and was working and performing the duties of such office. This evidence is sufficient to support the verdict of the jury on the issue submitted by the court in its instruction No. 16.

For its second ground in support of its demurrer to the evidence, the surety company contends the evidence showed that the bond giving by Martin was not in full force and effect at the time of the accident. It is contended the bond was for the specific term from February 23, 1925, to February 23, 1926, and that the bond had expired on July 3, 1926, the date of the accident.

Section 138, C. O. S. 1921, provides:

"Every appointed officer shall hold his office until the end of the term, for which the officer whom he succeeds was elected or appointed and until his successor is elected and qualified."

A portion of section 10, article 23, of the Constitution is as follows:

"Provided, that all officers within this state shall continue to perform the duties of their offices until their successors shall be duly qualified."

In the case of Ferguson v. Lawrence, 69 Okla. 119, 157 Pac. 1038, it was held that under this provision of the Constitution all officers, whether elected or appointed, continue to perform the duties of their offices until their successors qualify under the law.

On the 12th day of July, 1926, a few days after the accident, the board of county commissioners of Ottawa county passed a resolution wherein it was declared that the office of special traffic officer for said county was vacant. At the close of the first year after the appointment of Martin the county commissioners did not reappoint him, neither did they declare the office vacant. He continued to hold over. He was therefore what is in law termed a "hold-over" until the office was declared vacant by the county commissioners on the 12th day of July, 1926. He did not begin a new term under a new appointment, and this distinguishes this case from other cases wherein it is held the bond for one term does not cover the succeeding term. In addition to this, Martin paid the premium to the surety company for the year 1926-1927. After having accepted the premium for the second year, the surety company is not in a good position to say the bond was not in effect at the time the collision occurred.

For reversal it is next urged that the court erred in refusing to give defendant's requested instruction No. 5. This instruction raises the question that at the time of the accident the defendant Martin was not acting in his capacity as a special highway officer for Ottawa county, but was acting in the capacity of a policeman. This issue was fairly submitted to the jury by the court in its instruction No. 16, and for this reason the court committed no error in refusing to submit requested instruction No. 5.

The judgment of the trial court is affirmed.

BRANSON, C. J., MASON, V. C. J., and PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur.