## EXCISE BOARD OF OTTAWA COUNTY v. ST. LOUIS-S. F. R. CO. et al.

No. 26973.   April 28, 1936.

A. Clark, Co. Atty., Mac Q. Williamson,

Atty. Gen, and J. Harry Johnson, Asst. Atty. Gen., for plaintiff in error.

Cruce, Satterfield & Grigsby, for defendants in error.

CORN, J. The St. Louis-San Francisco Railway Company, by its trustees, filed a protest in the Court of Tax Review against the tax levy made for the general fund of Ottawa county for the fiscal year 1935-36. It was alleged that said levy is excessive to the extent of 0.057 mills, the reasons for this allegation being set out in said first cause of action as follows:

"Petitioners allege that the appropriations include $650 for refund to state for relief paid adult blind, under the purported provisions of chapter 24, article 1, Session Laws 1935; that said act is unconstitutional and void in that it is an attempt to provide for the payment by counties, for state purposes, which is forbidden by the amendment to section 9, art. 10, of the Constitution, and is also made a state duty and charge, only, by article 21 of the Oklahoma Constitution; and hence said appropriation and the levy therefor are unconstitutional, illegal and void."

Said protest came on for hearing before the Court of Tax Review on December 7, 1935, and after arguments were made the court said:

"With reference to this protest on this blind fund, gentlemen, after discussion with the other members of the court, we just feel this way about it: That under this act the levy has to be made, if it is made it has to be turned over to the state board to administer and to pay it out and to keep it and to have complete charge of it, and the county judge's function is only to determine the advisability of making the award; and we feel like it is unconstitutional."

Thereafter, said court filed its decision with the State Auditor, in which it found:

"That the levy complained of was authorized by the excise board of Ottawa county under the provisions of said chapter 24, article 1, Session Laws 1935, and more particularly sections 5 and 8 thereof; that said law is an attempt on the part of the Legislature to place an ad valorem tax upon property in the state, for a state purpose, to wit, for the refund to the state of Oklahoma of monies already expended by it, by and through its duly authorized commission; that under the provisions of section 9, art. 10, of the Oklahoma Constitution, as amended in August, 1933, no ad valorem tax levy shall ever be made for any state purpose; and that said chap. 24, art. 1, Session Laws 1935, in so far as it attempts to prescribe an ad valorem levy against counties, for the purpose of reimbursing the state of Oklahoma, is contrary to said section 9, art. 10,

Oklahoma Constitution, as amended; and hence said law, to that extent, is unconstitutional and void; and the appropriation and levy herein complained of are illegal and void."

Notice of appeal was thereafter given by plaintiff in error, and transcript of the proceedings in this cause was filed in the office of the Clerk of the Supreme Court on the 18th day of February, 1936.

Plaintiff in error alleges that there is error in the aforesaid judgment of the Court of Tax Review as follows:

(1) The court erred in sustaining the said protest.

(2) The court erred in not denying said protest.

(3) Said judgment is contrary to law.

(4) Said judgment is contrary to the evidence.

(5) Said judgment not sustained by sufficient and legal competent evidence. .

The only question to be determined in this cause is the constitutionality of article 1, secs. 1-16, chapter 24, Session Laws 1935, same being House Bill No. 328, of the Fifteenth Legislature. If said act is constitutional, the protest should be overruled; if not, it should be sustained.

The title to the aforementioned act reads:

"An act providing for and relating to pensions or benefits for persons who are wholly or partially blind and without means of support and incapable of self-support, adding certain powers and duties to the Oklahoma Commission for the Adult Blind, creating an Adult Blind Revolving Fund, providing for its expenditure and making an appropriation therefor, making appropriations for the administration of this act; and declaring an emergency."

Briefly stated, the procedure to be followed thereunder is as follows: Application for relief is filed with the Commission for the Adult Blind, and if said commission is satisfied that the applicant is entitled to relief, same is ordered in an amount not to exceed $300 per year. However, before such relief is paid, the commission petitions the county court of the county in which the applicant has a legal residence, "asking relief for said applicant in the amount named in said petition and praying an order of said court approving the same." After hearing proof in support of said petition, the court orders relief in the amount requested "of the amount to which he finds said applicant entitled", not to exceed $300 per year. Thereafter, upon delivery of a certified copy of said order to the commission, it pays the amount specified therein to the applicant out of a revolving fund created by said act, and files claim for said amount with the county commissioners of the county in which said hearing was had (the legal residence of the applicant), and said claim is "a proper charge against the poor fund of the county." Section 5 of said act provides:

"* * * It shall be the duty of the said board of county commissioners to approve said claim and issue a warrant for the amount thereof, payable from said poor fund, at the next meeting of the board."

Section 2 of said act provides:

"Any person interested may at any time apply to the Oklahoma Commission for the Adult Blind, hereinafter referred to as the commission, in behalf of any wholly or partially blind person who is without means of support and incapable of self-support, and ask for the relief provided under this act, provided the person for whom relief is sought is eligible under the provisions of section 3 thereof."

Section 3 of said act provides that an applicant must have wisdom which is "insufficient for use in an occupation for which sight is essential," and that he must be unable to provide himself with the necessities of life, have insufficient means of his own to support him, and have no relative or other person able to provide and legally responsible for his maintenance. He must also not be "an inmate of any charitable or correctional institution of this state or of any county or city thereof." Claims for such relief are, under the provisions of sections 5 and 8 of said act, properly chargeable against the "poor fund of the county", and only the county in which the recipient has a legal residence is authorized or required to pay the same.

Section 3, article 17, Oklahoma Constitution, reads as follows:

"The several counties of the state shall provide, as may be prescribed by law, for those inhabitants who, by reason of age, infirmity, or misfortune, may have claims upon the sympathy and aid of the county."

A section of the Kansas Constitution (section 4, article 7) which contains language identically the same as section 3, art. 17, supra, was held in Donnelly v. Board of County Commissioners of Atchison County, 130 Kan. 428, 286 P. 250, to be broad enough to include "persons whose infirmity or misfortune is insanity", and in Beck v. Board of County Commissioners of Shawnee County, 105 Kan. 325, 182 P. 397, it was held:

"The law is not unconstitutional because

it authorizes benevolent expenditure of public funds, derived by taxation, for the benefit of those who, by reason of age, infirmity, or other misfortune, have claims on the sympathy and aid of society, although not paupers."

Said constitutional provision of Kansas was also considered in City of Wichita v. Board of County Commissioners of Sedgewick County, 110 Kan. 471, 204 P. 693, and the court there held:

"The care of the poor, the afflicted, and destitute are governmental concerns, and the constitutional unit for the effective discharge of these humanitarian responsibilities is the county."

Therefore, it will hardly be questioned that one who is blind, incapable, and without means of support, is a person who, by reason of infirmity and misfortune, has a claim "upon the sympathy and aid of the county." The law in question prescribes the manner in which the several counties of the state shall provide for persons coming within the purview of section 3, article 17, supra, and in enacting the same, the Legislature but took a necessary step to carry the provisions of said section into effect. It is unquestionably within the province of the Legislature to determine how and in what manner this function shall be performed by the counties, and to prescribe the means of financing the same, which burden by the provisions of said section is to be borne by the counties.

The only theory upon which the judgment of the trial court was based was that a levy made under the provisions of the law in question is for a "state purpose" and thus is violative of section 9, article 10, Oklahoma Constitution, as amended on August 15, 1933, which provides:

"No ad valorem tax shall be levied for state purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in this state be used for state purposes. * * *"

The law in question does not authorize a county to levy taxes for state purposes. The Constitution specifically makes it the duty of the county to provide for its inhabitants who have claims upon the sympathy and aid of said county, and such taxes are for county purposes by express provision of the Constitution. Section 3, article 17, supra, must necessarily be considered in determining the constitutionality of this law, and may not properly be disregarded.

In the case of Herndon v. Anderson, 165 Okla. 104, 25 P. (2d) 326, cited with approval in C., R. I, & P. Ry. Co. v. Excise Board of Garfield County, 167 Okla. 414, 30 P. (2d) 171, the court considered the constitutionality of a law establishing a superior court in Garfield county and placing the burden of maintaining the same in said county. The plaintiffs contended that this was a state court, and for a state purpose, and that the burden of maintaining the same must be borne by the state. However, the court held this question to be "entirely legislative and not judicial," and said:

"Our Constitution does not in any manner attempt to define the difference between a state purpose and a local or county purpose, but places that matter in the Legislature."

The court cited and discussed numerous authorities to the effect that the Legislature may impose a tax upon municipal subdivisions of the state which are directly benefited thereby, although the state is incidentally benefited by said taxes.

Defendant in error also contends that the care of the blind is "made a state duty and charge, only, by article 21 of the Oklahoma Constitution", and a levy made therefor by a county is for a "state purpose", and invalid. Article 21, Oklahoma Constitution, reads:

"Educational, reformatory, and penal institutions and those for the benefit of the insane, blind, deaf, and mute, and such other institutions as the public good may require, shall be established and supported by the state in such manner as may be prescribed by law."

A similar provision of the Kansas Constitution was considered by the court in Donnelly v. Board of County Commissioners of Atchison County, supra, and it was held:

"The Constitution provides that institutions for the benefit of the insane, blind, and deaf, and dumb, and such other benevolent institutions as the public good may require, shall be fostered and supported by the state, subject to such regulations as may be prescribed by law. Article 7, section 1.

"From this constitutional provision plaintiffs postulate that the care and maintenance of insane persons cannot be cast on the individual counties, and they argue how unjust it would be for the taxpayers of Atchison county to have to contribute, as they must do, to the support of the several state hospitals for the insane recruited from all over the state, and at the same time to have to pay for the erection of a county institution of the same sort to house Atchison county citizens who may be thus afflicted.

"This argument would be more potent on the floor of the Legislature than in the

courtroom. The Constitution contains another provision equally potent with the one quoted above. It reads: 'The respective counties of the state shall provide, as may be prescribed by law, for those inhabitants, who, by reason of age, infirmity, or other misfortune, may have claims upon the sympathy and aid of society.' Article 7, sec. 4.

"This section of the Constitution is just as broad and all inclusive as the one relied on by plaintiffs, and the fair construction of both of them is that it is the duty of the state and also of the several counties to make suitable provision for the care of the insane, subject to such regulations 'as may be prescribed by law.' Article 7, section 1; article 7, section 4. These constitutional provisions, which are manifestly not self-executing (State ex rel. v. Deck, 106 Kan. 518, 188 P. 238) virtually give the Legislature a free hand to impose the cost of care and maintenance of mentally infirm persons upon the state or the counties, or on both, according to the lawmakers' notions of wisdom and expediency."

Article 21, supra, does not prohibit counties from providing for the blind, but merely provides that the state shall establish and support certain institutions. It does not nullify the provisions of section 3, article 17, supra, but said section is equally as potent. It happens that only one institution for the blind has been established by the state (see article 19, c. 26, sec. 5268, et seq., O. S. 1931), and its purpose is to provide an education for blind persons between the ages of six and 21 years. No institution has been established for the indigent adult blind. It has been held that although the state has established an institution under the provisions of article 21, supra, that does not preclude a county from levying ad valorem taxes to care for persons who are eligible to be admitted to such institutions, but who are not inmates thereof. See Protest of C., R. I. & P. Ry. Co., 164 Okla. 118, 23 P. (2d) 157; C., R. I. & P. Ry. Co. v. Excise Board of Stephens County, 168 Okla. 519, 34 P. (2d) 274. The authority granted by article 21, supra, does not operate as a limitation on the authority and duty of the county under the provisions of section 3, article 17, supra.

A constitutional provision should receive a broader and more liberal construction than is applied to statutes. Shaw v. Grumbine, 137 Okla. 95, 278 P. 311.

In the case of Herndon v. Anderson, supra, this court said:

"At the very threshold we free this case from all technical embarrassments and consider the constitutionality of the act creating the superior court. In considering the constitutionality of a legislative enactment,

'we must maintain consciences, void of offense, whatever we do or omit to do.' Prothro v. Orr, 12 Ga. 36, 40.

"The Supreme Court of Missouri, in Ex parte Loving, 178 Mo. 194, 77 S. W. 508, said: 'In State ex rel. v. Aloe, 152 Mo. 477, 54 S. W. 496 (47 L. R. A. 393), it was very clearly and tersely stated: "When the validity of a statute is drawn in question, the court approaches the subject as one involving the gravest responsibility, and to be considered with the greatest caution. The General Assembly is presumed to have been as careful to observe the requirements of the Constitution in enacting the statute as the court in applying it. Every presumption is to be indulged in favor of the validity of the act, and that presumption is to continue until its invalidity is made to appear beyond a doubt." To the same effect is State ex rel. v. Pike County, 144 Mo. 277, 45 S. W. 1098, where it is said: "It is the duty of the courts to uphold a legislative act unless it plainly and clearly violates the Constitution, and, if its language is susceptible of a meaning that will remove the objections to its validity, such interpretation should be adopted. 'A legislative intent to violate the Constitution is never to be assumed if the language of the statute can be satisfied by a contrary construction.' Endlich on the Interpretation of Statutes, section 179. It is our duty to uphold the act unless it plainly and clearly violates the fundamental law of the state, and, if its language is susceptible of a meaning that will remove the objections to its validity, such interpretation should be adopted." ' "

In Baker v. Carter, 165 Okla. 116, 25 P. (2d) 747, it was held:

"In construing the constitutionality of this legislative enactment, we are not concerned with its propriety, desirability, wisdom, or its practicability as a working proposition. Those questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department of government. The function of the court is clearly limited to the determination of the validity or invalidity of the act. There is a presumption that the act is constitutional.

"In 1 Cooley's Constitutional Limitations (8th Ed.) p. 371, it is said: 'When courts are called upon to pronounce the invalidity of an act of legislation, passed with all the forms and ceremonies requisite to give it the force of law, they will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt.' "

Acts of the Legislature will not be held invalid unless they are clearly in conflict with some constitutional provision, and all doubt, where there is doubt, will be resolved in favor of the constitutionality of the act. Wallace v. Gassaway, 148 Okla. 265, 298 P. 867. Every legislative act is presumed to be constitutional, and the court should not declare an act to be unconstitutional unless it is clearly so; and, if there is doubt, the expressed will of the Legislature should be sustained. Dies v. Bank of Commerce, 100 Okla. 205, 229 P. 474; Martin v. Follis, 133 Okla. 162, 271 P. 672. It is only where an act of the Legislature is clearly, palpably, and plainly inconsistent with the terms and provisions of the Constitution that the courts will interfere and declare such act invalid and void. Munroe v. McNeill, 122 Okla. 297, 255 P. 150; Protest of Downing, 164 Okla. 181, 23 P. (2d) 173. The action of the lawmaking power must in all cases be upheld, unless its action is manifestly in contravention of the Constitution. No slight difference of opinion will authorize the judiciary to set aside the action of the lawmaking power, or to nullify any act of the Legislature. Ex parte Owen, 143 Okla. 8, 286 P. 883.

At the conclusion of the hearing below, the trial court remarked that if a levy is made under the provisions of article 1, chapter 24, supra, "it has to be turned over to the state board to administer and to pay it out and to keep it, and the county judge's function is only to determine the advisability of making the award." There is not one word of testimony, and no provision of said act, upon which such a statement could logically be based. Section 5 of said act specifically provides that the county judge shall not only determine if the applicant is entitled to said relief, but shall also, if it is so determined, order relief "in the amount to which he finds said applicant is entitled, not to exceed the sum of $300 per year." Furthermore, the Commission for the Adult Blind is to pay the amount named in the order of the county judge, and thereafter file a claim therefor with the county commissioners. It will be noted that said Commission for the Adult Blind has no discretion in the matter, but performs a purely ministerial function in carrying out the order of the county judge. There is no constitutional inhibition against placing this authority in the county judge rather than any other county officer, nor is there any mandatory provision in the Constitution of this state requiring the Legislature to vest the administration of laws of this nature

in any particular county officer. It is a matter resting exclusively within the discretion of the Legislature, to be determined as it may think best. The county judge has been designated by legislative enactment to act as the county's agent in providing for crippled children whose parents are unable to provide for their treatment, which class of persons is within the purview of section 3, article 17, supra. His authority to act in this capacity has never been questioned.

Apparently the trial court was confused by reason of the fact that a state commission performs some duties in carrying into effect the provisions of this act. However, its duties are purely ministerial and are performed only in execution of the order of the county judge. It is not authorized to create any obligations against the county. Its functions do not make the levy in question one for a state purpose. In the case of Excise Board of Stephens County v. C., R. I. & P. Ry. Co., 168 Okla. 523, 34 P. (2d) 268, the protestant contended that a levy made under the provisions of the biennial county adult law (chapter 40, Session Laws 1933) was for a state purpose, and thus violated section 9, article 10, Oklahoma Constitution, as amended. In this respect the court said:

"It is true that under this constitutional provision an ad valorem levy on taxable property cannot be made for state purposes. But is a levy for a county audit a state purpose? The purpose of the levy must be judged by the object to be accomplished thereby. The object of this act is to provide for an audit of the books of each county. An audit of the books of a particular county is a matter in which the other counties of the state have no particular interest. It is just as truly a county purpose as is keeping the records in county clerk or county treasurer's office. It is none the less a county purpose because a state officer is charged with the duty of designating the persons who shall conduct the same, instead of some one of the county officers. The purpose of the audit is the same as though it were supervised by some one of the county officers. There is no particular reason why all of the counties in the state should share the burden of expense of auditing the books of each of the other counties."

The care of indigent blind persons is a duty imposed upon the respective counties of which they are inhabitants by section 3, art. 17, Oklahoma Constitution. It is a county function to be performed in the manner prescribed by the Legislature. The manner in which the several counties shall provide for such persons rests within the discretion

of the Legislature, and is, therefore, a legislative rather than a judicial question. Article 1, c. 24, secs. 1-16, Session Laws of 1935, was enacted pursuant to said section of the Constitution, and a county is authorized thereunder to grant relief to such persons as therein directed. The object to be accomplished thereby is a compliance with said constitutional provisions, and taxes levied in that respect are, therefore, for a county purpose, and are not for a state purpose, although the Legislature has designated a state agency to perform ministerial duties in order that this county function may be properly exercised. Said act does not violate either section 9, art. 10, Oklahoma Constitution, as amended in 1933, or article 21, Oklahoma Constitution, and is a valid legislative enactment.

For the reasons above stated, the judgment of the Court of Tax Review is reversed and set aside, and this cause is remanded, with directions to said Court of Tax Review to deny and overrule the protest of defendant in error.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, WELCH, and PHELPS, JJ., concur. GIBSON, J., dissents. BAYLESS, J., absent.