## PAWNEE COUNTY, EXCISE BOARD, v. KURN et al.

No. 29684.   April 16, 1940.

*101 P. 2d 614.*

Horace D. Ballaine, County Attorney, of Pawnee (Carl D. McGee, of Pawnee, of counsel), for plaintiff in error.

J. W. Jamison, of St. Louis, Mo., and Cruce, Satterfield & Grigsby, of Oklahoma City, for defendants in error.

WELCH, V. C. J.   The taxing officials of Pawnee county refused to apply any portion of the moneys received by the county as its distributive share of vehicle license tax toward financing the sinking fund accruals on its road bonds for the fiscal year 1939-40. The result was a greater ad valorem tax levy on protestant's property than would have resulted otherwise.

In justification of their action, the county here urges that the provisions of article 7, chapter 50, S. L. 1937, and article 7, chapter 50, S. L. 1939, which

require that a portion of such funds be used for the above-mentioned purpose, are unconstitutional for various reasons, which we quote as follows:

"Proposition I. The sections complained of are repugnant to section 20, article 10, of the Constitution of the State of Oklahoma, because they provide that the Legislature shall impose taxes for a county purpose.

"Proposition II. The sections complained of are repugnant to section 19, article 10, of the Constitution of the State of Oklahoma, because they provide that taxes collected for one purpose shall be devoted to another purpose.

"Proposition III. The sections complained of are repugnant to section 14 of article 10 of the Constitution of the State of Oklahoma, because they provide that the state shall assume the debt of the county."

We also quote portions of the two legislative acts to which the taxing officials point as containing the unconstitutional requirements or provisions; being a portion of section 3 of the 1937 act as follows:

"(1) Thirty (30%) per centum shall be deposited in the State Treasury and credited to the State Highway Construction and Maintenance Fund to be expended by the State Highway Commission upon the State Road System;

"(2) Fifty-five (55%) per centum to be allocated to the various counties of the state, said allocation to be made in the proportion which the total county road mileage in each county bears to the total county road mileage in the state as certified by the State Highway Commission; such sums as may be due the various counties shall be remitted to the respective county treasurers monthly; such sums so remitted to the respective county treasurers shall be deposited and used as follows:

"First. So much of fifty (50%) per centum thereof as may be necessary for the retirement of indebtedness created by the issuance of bonds for the construction, improvement or repair of highways and shall be deposited in the sinking fund of such county for such purpose;

"Second. The remainder of the sums so allocated to each such county shall be deposited in the county highway fund for the construction, maintenance and upkeep of the county highways."

The 1939 act, a portion of section 3, article 7 of chapter 50, as follows:

"Fifty-five (55%) per centum of the remaining revenue shall be allocated to the various counties of the state in the following manner: Forty (40%) per cent. of such sum shall be distributed to the various counties in that proportion which the county road mileage of each county bears to the entire state road mileage as certified by the State Highway Commission, and the remaining sixty (60%) per cent. of such sum shall be distributed to the various counties on the basis which the population and area of each county bear to the total population and area of the state. Such sums as may be due the various counties of the state shall be remitted to the respective county treasurers monthly. The county treasurer shall deposit so much of said money in the sinking fund as may be necessary for the retirement of indebtedness created by the issuance of county or township bonds for road purposes, but not to exceed forty (40%) per cent. of such moneys shall be so used."

The purpose of the levy of the tax is further expressed by the Legislature in the following language:

"The registration fees imposed by this act upon vehicles, other than those of manufacturers and dealers, shall be for the purpose of reimbursing the state for the use of the public highways and for the maintenance and upkeep of the public highways of the state and for the administration and enforcement of the provisions of this act and shall be in lieu of all ad valorem taxes, general or local, to which such vehicles may be subject, as personal property, under the laws of this state, and shall apply to every person operating any vehicle upon, over, along, or across any public highway of this state."

See section 8 of the 1937 act, and section 10 of the 1939 act.

We think there can be no doubt, from a consideration of these acts in their entirety, that the purpose of the tax levy

in each instance is to provide for and promote the public road program, which is inherently and by our Constitution a proper state purpose.

The county does not contend that the *levy* of the tax is unconstitutional, and appears to be willing to accept Pawnee county's distributive share thereof, thus recognizing the authority of the state to levy and collect the same for use in that county; nor do we understand that they claim that the levy is not, in its broadest sense, one for the promotion of roads in which the state and its citizens as a whole are beneficially interested.

The county would appear willing to accept the county's part of the proceeds of the levy, but, in effect, says that the money must be retained and spent by them in *future* construction and maintenance of roads.

It is urged that when a county issues bonds for road purposes, any money thereafter used to pay the bonds is simply a use of funds to pay debts, and that it cannot properly be said that the payments made on such bonds are payments for road purposes or in promotion of the procurement or maintenance of public roads. They place chief reliance on two Florida cases, Amos v. Mathews (Fla.) 126 So. 308, and Carlton v. Mathews (Fla.) 137 So. 815. Those decisions contain some language lending support to the validity of our act, and some language to the contrary. However, they do not construe acts identical with the enactment of this state here considered; and in view of the various theories therein discussed and some of the conclusions to which they reason, we do not consider either of those decisions as a satisfactory guide to a proper solution of our problem here.

Specifically, the county claims here that the debt of the county road bonds is strictly a county debt and that the Legislature is herein attempting to levy a tax for a purely local county purpose, and in that regard the provisions of section 20, article 10, of the Constitution are violated. That section provides:

"The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes."

It is well settled that the Legislature may levy a tax for a purpose in which the state had a sovereign interest and such interest extends to the construction and maintenance of roads. Ex parte Shaw, 53 Okla. 654, 157 P. 900, and Thurston v. Caldwell, 40 Okla. 206, 137 P. 683.

A generally accepted principle governing the construction of constitutional provisions is to be found in 16 C. J. S. p. 61, sec. 20, as follows:

"Unless a contrary intention is indicated, words used in a Constitution will generally be interpreted in their natural or popular, as distinguished from a technical, meaning."

Further applicable principles are collected in Excise Board of Ottawa County v. St. Louis-S. F. Ry. Co., 176 Okla. 641, 57 P. 2d 261, from which we quote the following:

"Acts of the Legislature will not be held invalid unless they are clearly in conflict with some constitutional provision, and all doubt, where there is doubt, will be resolved in favor of the constitutionality of the act. Wallace v. Gassaway, 148 Okla. 265, 298 P. 867. Every legislative act is presumed to be constitutional, and the court should not declare an act to be unconstitutional unless it is clearly so; and, if there is doubt, the expressed will of the Legislature should be sustained. Dies v. Bank of Commerce, 100 Okla. 205, 229 P. 474; Martin v. Follis, 133 Okla. 162, 271 P. 672. It is only where an act of the Legislature is clearly, palpably, and plainly inconsistent with the terms and provisions of the Constitution that the courts will interfere and declare such act invalid and void. Munroe v. McNeill, 122 Okla. 297, 255 P. 150; Protest of Downing, 164 Okla. 181, 23 P. 2d 173. The action of the law-making power must in all cases be upheld, unless its action is manifestly in contravention of the Constitution. No slight difference of opinion

will authorize the judiciary to set aside the action of the law-making power, or to nullify any act of the Legislature. Ex parte Owen, 143 Okla. 8, 286 P. 883."

We think the meaning which is here sought to be placed on the word "purpose," as used in section 20, article 10, of the Constitution, is too narrow and restricted and does not conform to the common acceptation of its use. A father sends his son a monthly allowance for the *purpose* of providing incidentals, and upon receipt of the monthly sum the son pays his previous month's bills for incidentals or repays to his roommate the sum he had borrowed from him, with which he had paid such account for incidentals. Would it be commonly thought or understood that the son had used the funds for anything other than for the *purpose* of *procuring* incidentals? We think not. Yet the son in that case, according to the theory advanced here by the county, would not have used the funds for the *purpose* of *procuring* incidentals, but would have used the same for the *purpose* of *paying a debt*.

The wage earner, upon receipt of his weekly pay envelope, pays his grocer the debt he owes for groceries furnished the prior week. Would it not be commonly, indeed properly, said that he used his funds for purposes of procuring groceries? We are not inclined to answer the question in the negative.

And we conclude that, although we may be considering a debt which is in fact that of the county, the debt need not be wholly divorced from its original purpose. The debt is incidental to the purpose, and it will not be disputed that its purpose was one in which the state had a beneficial interest at the time it was created, and in the payment of which it now has such interest, for in the promotion of its payment by aid of the state, there is a promotion of the state's future interest in that there is or may be inducement for further roads by the same process.

The word "purpose" has been defined in Ex parte McCoy, 10 Cal. App. 116, 101 P. 419, as follows:

"The word 'purpose' means 'that which a person sets before himself as an object to be reached or accomplished; the end or aim to which the view is directed in any plan, matter, or execution' (citing Words & Phrases [First Series] vol. 7, pp. 5865, 5866)."

There is nothing in section 20, article 10, of our Constitution indicating that the word is there used otherwise than in a broad sense, and that it simply means objectives of any county, or the end sought. In the matter of county bonds for road purposes, we think it is not the object or purpose of a county to acquire a debt, but to acquire roads.

The foregoing discussion discloses that section 19, article 10, of the Constitution is not violated by the legislation under consideration. The tax is levied for road purposes, and we have shown that its use in the manner therein provided is not foreign to such purpose.

Under proposition 3 it is urged that the legislation is violative of section 14, article 10, of the Constitution in that thereby there is an assumption of a debt of the county. No authorities are given us by the county which support that view.

We observe, however, that the question has been decided contrary to that contention.

In Salmon River-Grande Ronde Highway Improvement Dist. v. Scott, 27 P. 2d 183, it is shown that the Legislature of the state of Oregon had provided state funds as a contribution to a road district toward construction of a highway. The court there, in determining whether the state was assuming payment of a highway improvement district debt, and assuming that the funds would be used to pay the bonds of the district, had this to say:

"Let us assume, however, that we may take into consideration, in determining the constitutionality of the act, the admitted fact that the money paid will be used to retire these highway improvement bonds. Does it follow that there is an assumption of indebtedness by the state and that such constitutes a viola-

tion of the fundamental law? We fail to see wherein the act obligates the state to pay these bonds. The legal obligation to pay this bonded indebtedness still rests upon the highway improvement district. The state has not undertaken to adopt the liability of the district, nor to put itself in place of the district. It is within the power of any future Legislature to discontinue the payments provided in the act in question. Assumption of indebtedness, in the ordinary acceptation of the words, means for one person to bind himself to pay the debt incurred by another. Vol. 1, Words and Phrases, First Series, page 589."

The language there used is wholly appropriate to the question raised under the third proposition herein urged, and we adopt the same in the present disposition of the question so raised.

The judgment of the Court of Tax Review is affirmed.

BAYLESS, C. J., and RILEY, OSBORN, CORN, HURST, DAVISON, and DANNER, JJ., concur. GIBSON, J., absent.